Daniel Srourian (SBN 285678)
**SROURIAN LAW FIRM, P.C.**
468 N Camden Drive, Suite 200
Beverly Hills, CA 90210
Tel: (213) 474-3800
E: daniel@slfla.com

Leslie Pescia (*pro hac vice forthcoming*)
Rachel N. Minder (*pro hac vice forthcoming*)
**SIRI & GLIMSTAD LLP**
101 North Seventh Street, #827
Louisville, KY 40202
T: (646) 442-6466
lpescia@sirillp.com
rminder@sirillp.com

*Attorneys for Plaintiff & Putative Class Members*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANTHONY HERNANDEZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ZURU, LLC,<br><br>Defendant. | Case No: 2:26-cv-12580<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Anthony Hernandez ("Plaintiff") on behalf of himself and all others similarly situated, bring this Class Action Complaint against ZURU, LLC

("Defendant") and alleges the following based on personal knowledge as to himself, and as to all other matters, upon information and belief, including investigation conducted by his attorneys:

## NATURE OF THE ACTION

1. This is a proposed class action arising from the sale of all sizes of Millie Moon Luxury Diapers, marketed as "dermatologically tested" and "safe on sensitive skin" but causing numerous rashes and burns on infants and children across the country.

2. Defendant designed, formulated, manufactured, branded, labeled, marketed, distributed, and sold Millie Moon disposable diapers (the "Products") that cause burns and severe rashes.

3. Millie Moon diapers are priced at a premium and sold as "Luxury Diapers."

4. Hundreds of parents have complained about the severe rashes and burns developing on their children after use of Millie Moon diapers. Most claim that these injuries only healed after switching to another brand of diaper.

5. The Consumer Product Safety Commission ("CPSC") website alone includes over 385 reports of rashes or burns developing after use of Millie Moon diapers.

6. Several other parents have left scathing reviews of the product through retailer websites or made posts or comments about their negative experiences with the Products on social media.

7. Numerous parents describe the severe rashes developing on their children as consistent with contact or chemical burns. The rashes cause the skin in the affected areas to become thin, extremely red, and even secrete discharge or become bloody. Infants and children have also developed welts, open wounds, and

peeling skin in the diaper area after exposure. Regardless of the specific injury presented, the complaints repeatedly contain the same experience: irritation of the skin in the diaper-covered areas, unsuccessful attempts to treat the irritation while continuing to use the Products, and improvement of the irritation after discontinuing use of Defendant's Products.

8. Consumers report these injuries across all sizes of the Products. Upon information and belief, there is no material difference in construction, materials, or manufacturing processes of differing sizes.

9. Every Product contains the same misrepresentations on the label: that they are "dermatologically tested," "fragrance free," "latex free," "free from lotions," "allergy certified" and bears the Oeko-Tex Standard 100 certification. The Target retailer webpage further states that the products are "dermatologist tested safe on sensitive skin."

10. The specific website for the Products, mymilliemoon.com, further claims that the "diapers are designed to keep skin dry and help reduce rashes" due to the inclusion of "a high-GSM topsheet to instantly absorb moisture."[1]

11. The website also vaguely claims that the "diapers are dermatologically tested and quality certified by world leading organizations."[2]

12. Nonetheless, the Products are defective as the high number of consumer complaints evidences the risk of harm inherent in the Products. Each purchase includes a risk that the formulation, design, or some other component of the Product will cause rash or burns to infants or children who wear them.

13. Because Defendant's diapers are worn directly on the skin for prolonged periods of time, the reports of welts, blisters, open wounds, reddened or bleeding skin, and burn-like injuries present a serious safety concern for consumers.

---

[1] **MILLIE MOON, https://mymilliemoon.com/en-US (last visited October 5, 2026).**
[2] ***Id.***

14. Defendant is well aware of the risks associated with its Products. Yet in response to thousands of complaints, Defendant refuses to recall the defective Products.[3]

15. Defendant has also failed to issue any proactive safety alerts, warnings, or ameliorative corrective measures. Instead, Defendant continues to profit from sales to reasonable consumers nationwide.

16. Defendant generates substantial revenue from these sales. The Products are priced from roughly $8.99 to $49.99, depending on the package size. Diapers are sold in at least nine separate sizes, but, upon information and belief, the formulation and material of the Products does not vary between sizes.

17. Defendant is able to charge these premium prices through their marketing efforts and by withholding from consumers the material fact that the Products are defective. Defendant knew, or should have known, that reasonable consumers prioritize safety and reliability in diapers for their children and would never knowingly purchase a Product with high likelihood of causing rash or burns on users. Nonetheless, Defendant still fails to disclose the associated risks.

18. The defect in the Products existed at the time of purchase. Plaintiff and Class Members reasonably believed the Products were safe for their intended use and purchased them based on that assurance.

19. The defect in the Products remains, leaving the Products unsafe, unfit for use, and worth substantially less than represented or warranted.

20. Each Product contains the same inherent defects, which are present at the time of sale and create a serious safety risk to consumers, unbeknownst to buyers but known to Defendant. As a result, Plaintiff and other reasonable consumers were placed at a disadvantage, subjected to Defendant's superior industry knowledge.

[3] ***See Millie Moon says it won't recall diapers, despite reports of chemical burns*****, WCPO (last updated Sept. 23, 2026 8:57 AM), https://www.wcpo.com/money/consumer/dont-waste-your-money/millie-moon-says-it-wont-recall-diapers-despite-reports-of-chemical-burns.**

21. No reasonable consumer would have purchased the Products on the same terms had they known of the defect. Defendant continues to sell the Products despite knowing of the vulnerability of the diapers and the risks that infants and children utilizing the Product will develop rashes or burns. Despite the hundreds—perhaps thousands—of reported injuries, Defendant continues to prioritize profit over safety. Defendant fails to provide consumers, including Plaintiff and Class Members, with any meaningful remedy.

22. Had Plaintiff and Class Members known about the defects, they would not have purchased the Products.

23. Plaintiff and all reasonable consumers trusted that Defendant's Products were safe to use as intended, especially given the representations on the packaging and the Millie Moon website. But the number of complaints of injuries proves they are not.

24. Plaintiff's economic injury occurred immediately upon purchase because Plaintiff paid for Products represented as safe for his child but contained an undisclosed latent hazard.

25. Had Plaintiff known of the defects at the point of purchase, he would have purchased competing diapers or paid substantially less.

26. The defects substantially reduced the market value of the Products, which were priced at a premium on the day of purchase.

27. Plaintiff, on behalf of themselves and the Class, seek damages and all other relief available at law and in equity, including punitive damages for Defendant's misconduct. Plaintiff also seek class-wide injunctive relief, including: (i) a recall of all diapers known to be causing rash or burns; (ii) a state-of-the-art notice program for the wide dissemination of a factually accurate recall notice for the Products; (iii) an order requiring Defendant to implement and maintain adequate testing for any substances causes reactions to users, either in the materials of the

diapers or contamination on the diapers; (iv) an offer to replace the Products with non-defective and safe products; and/or (v) a full refund of the purchase price.

28. This action seeks to hold Defendant accountable for their conscious decision to sell a dangerous product, their concealment of the known hazard associated with the defects, and their failure to implement a recall or other proactive remedy to avoid harm to consumers.

## PARTIES

***Plaintiff Anthony Hernandez***

29. Plaintiff Anthony Hernandez is and was at all relevant times a citizen of Lake Balboa, California. Plaintiff Manriquez purchased defective Products from Defendant through a North Hollywood Target store in California.

30. On September 7, 2026, Plaintiff Hernandez purchased Millie Moon diapers from Target. Specifically, Plaintiff Hernandez purchased Size 2 diapers in a 96 count box.

31. Plaintiff Hernandez purchased the Products based on Defendant's representations that they were a better-quality Product and safe for his child's skin. Plaintiff Hernandez reviewed the marketing and the product packaging and label when purchasing. Plaintiff Hernandez reasonably understood the Product labels to mean the diapers were safe for use on his children.

32. Plaintiff Hernandez used the Products as instructed to diaper his child.

33. Plaintiff Hernandez expected the Products could be safely used on his children and would not pose a serious risk of harm. Plaintiff was unaware of the serious safety concerns associated with the Products.

34. Plaintiff would not have purchased the Products had he known about their defects and that the Products were unsafe to use on his children.

35. When using the Products, they did not function as represented. The quality of the Products was severely lacking—numerous leaks were experienced and Plaintiff Hernandez's child developed a rash where the Product touched his skin.

***Defendant***

36. Defendant ZURU, LLC is a limited liability company organized in California with members located in El Segundo, California and Hong Kong, China. ZURU, LLC has its principal place of business at 2121 E Maple Avenue, El Segundo, CA 90245. ZURU, LLC is identified as the entity responsible for distributing the Products in the United States. ZURU, LLC manufactures, markets, distributes, and sells the Products throughout the United States, including in Illinois and in this District.

## JURISDICTION AND VENUE

37. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act because: (1) there are 100 or more putative Class Members; (2) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; and (3) there is diversity because at least one Plaintiff or Putative Class Member and Defendant are citizens of different states.

38. This Court has personal jurisdiction over Defendant because Defendant does substantial business in California and within this District, receives substantial compensation and profits from the marketing, distribution, and sale of Products, and has engaged in the unlawful practices described in this Complaint within this District. Defendant directed marketing and offered for sale its Products within this District.

39. Under 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, as Defendant regularly transacts business in this District. Defendant has

intentionally availed itself of the laws and markets within this District. Plaintiff Hernandez also resides in this District and purchased defective Products within this District.

## COMMON FACTUAL ALLEGATIONS

### I. The Products

40. Upon information and belief, the risks associated with Defendant's Products do not seem to be limited to a specific diaper or packaging size. All of Defendant's disposable diapers are therefore affected Products, whether purchased as size Newborn, 1, 2, 3, 4, 5, 6, 7, or 8, and in any package size. There is no obvious material difference in construction, materials, or manufacturing processes of differing sizes and consumers report complaints of the same injury occurring in infants and children of multiple sizes.

41. The products are sold at retailers across the country, including Target, Walmart, Kroger, Meijer, CVS, and Albertsons. Depending on the diaper and packaging size, the Products are sold between $8.99 and $49.99.

42. The Millie Moon brand first launched exclusively in Target in 2021, but expanded heavily into major U.S. retailers in mid-2025.

43. Consumers purchasing the Products believe they are purchasing a "luxury" product for their children as the Products are marketed as premium disposable "Luxury Diapers" that are "Beautifully Crafted, Feather Soft."

44. The labels of all Products make affirmative representations about how the Products should perform and the quality consumers can expect. The packaging of the Products advertises that the diapers are "dermatologically tested," "feather soft," include a "wetness indicator," "12 hour absorbency," "double leak guard,"







"pH balance liner," "secure tabs," and "snug and high waist," and are "fragrance free," "latex free," and "free from lotions."

45. The package also bears an Allergy Certified Seal and an OEKO-TEX Standard 100 seal, obtained after a product passes safety tests for the presence of harmful substances.[4]

46. The Millie Moon website, mymilliemoon.com, claims that the Products use "only high quality materials" and "you'll find no nasties—such as lotions, latex or fragrance" in the Products.[5] The site also claims that the Products are "crafted with an enhanced fiber blend" and "made with a high-GSM topsheet to instantly absorb moisture" so the Products "are designed to keep skin dry and help reduce rashes."[6] The website claims the Mille Moon brand sources "premium ingredients from the best suppliers from around the world" and "assembl[es] our products in China."[7]

---

**[4] *OEKO-TEX Standard 100: the original safety standard*, OEKO-TEX, https://www.oeko-tex.com/en/our-standards/oeko-tex-standard-100/ (last visited Oct. 5, 2026).**
**[5] *About Millie Moon*, MILLIE MOON, https://mymilliemoon.com/en-US/about-milliemoon-diapers (last visited Oct. 5, 2026).**
**[6] *Product Features*, MILLIE MOON, https://mymilliemoon.com/en-US (last visited Oct. 5, 2026).**
**[7] *FAQ*, MILLIE MOON, https://mymilliemoon.com/en-US/faqs (last visited Oct. 5, 2026).**

47. No hazards are disclosed on the Product labels, retailer websites, or mymilliemoon.com.

48. Defendant's consumer-facing marketing is materially misleading and induced consumers, including Plaintiff and Class Members, to purchase and use the Products under a false sense of safety. By promoting the Products as "dermatologically tested" and made with only high-quality ingredients free from dangerous substances, Defendant engaged in deceptive and misleading advertising practices.

49. Diapers such as Defendant's Products are expected to be safe for use on children, especially considering that diapers are placed directly onto infants' and children's skin for prolonged periods of time. Consumers reasonably expect such products will be designed and manufactured to safely contact their children's skin and will not present a risk of severe rash or burn-like conditions.

50. Defendant holds itself out as a trusted and safety-conscious manufacturer of diapers and promotes the Products as "luxury" diapers created with only the best and safest materials. By emphasizing that it uses "only high quality materials" designed to reduce rashes, Defendant cultivates consumer trust and distinguishes its Products from lower-cost alternatives. These marketing efforts enable Defendant to sell the Products to thousands of consumers nationwide, through multiple major retail platforms.

51. Consumers reasonably relied on Defendant's representations that the Products were safe for their intended use and incorporated appropriate materials, design, and manufacturing processes to prevent injury. Defendant's marketing reinforced the perception that the Products were carefully engineered, tested, and safe for use on infants and children.

52. As a result, consumers, including Plaintiff and Class Members, were induced to purchase and pay for the Products based on Defendant's representations

of safety, quality, and performance. In reality, the Products contain a latent defect that poses a serious risk of injury.

53. Defendant exercises control over the nature and quality of the Products sold under the Millie Moon marks and is responsible for the quality of those items.

## **II. Consumers Have Been Harmed by Defendant's False and Misleading Representations**

54. WCPO in Cincinnati reports that over 375 complaints had been filed with the CPSC since March 2026.[8] A search for "Millie Moon" on saferproducts.gov shows 584 total reports—165 of which have been made since WCPO's reporting.[9]

**The Consumer stated that she used a brand's diapers on her 1-month-old daughter and the baby...**

Incident Report | 6/5/2026 | 20260519-59AAC-2147319047

**Incident Description:** I started using Millie Moon diapers on my infant. She developed rash all over her bottom. blisters and was swollen. all red dots. inflamed. super red. i didnt know what the cause was until i changed diapers and its mainly cleared and gone.

**Product:** Diapers (1512)

**Product Description:** Millie Moon diapers. Newborn size.Blue animals

**Injury Info:** Seen by Medical Professional

**Manufacturer / Importer / Private Labeler:** Zuru Inc.

**Incident Details**

**Incident Description:** My baby has been using millie moon wipes and diapers size newborn and size 1. last month, i had to take my baby to the pediatrician due to severe ulcer, chemical burn looking patches on her skin. i have never had an issue with any other diaper. i was told it was a severe diaper rash. after using medicated creams, OTC creams, breast milk baths, letting it air out etc, NOTHING HELPED. her skin began to even bleed. Last week, i switched her diapers and wipes to huggies, and within 2 days her skin began to resolve, and now today is healed. since noticing this, i have researched multiple other moms reporting similar issues with millie moon. PLEASE TAKE THESE OFF THE SHELVES! OUR BABIES ARE GETTING BURNS FROM THESE PRODUCTS!

**Incident Date:** 4/9/2026

**Incident Location:** Other

55. The CPSC has stated that it cannot comment on any active or potential investigations being carried out. Nonetheless, Defendant has responded to consumer complaints on retailer websites.

56. For instance, in response to one parent explaining the skin irritation her baby experienced when wearing Millie Moon diapers, the reply only again highlighted that the Products are "certified by OEKO-TEX, Dermatest, and PETA

---

[8] *See Millie Moon says it won't recall diapers*, WCPO, *supra* n.3.

[9] *"Millie Moon" Search*, SAFERPRODUCTS.GOV, https://www.saferproducts.gov/PublicSearch/Result (last visited Oct. 7, 2026).

as well as Cruelty-Free and Vegan, with no latex, lotions, or fragrances to ensure they are as gentle as possible”:

★☆☆☆☆ Would not recommend

4 September, 2026

Gave my baby a rash on his lower back within hours of wearing. He was constantly crying in discomfort before I realized. Immediate relief once the diaper was off. We've never had this happen with Pampers or Huggies.

**1 reply from Millie Moon team - 28 days ago**

Hi Alexis, we appreciate you reaching out and leaving a review. We are so sorry to hear about the experience both you and your little one have had. As parents ourselves I can understand how worrying this would have been for you and your family. At Millie Moon, we believe that your child deserves only the best. That's why our are certified by OEKO-TEX, Dermatest, and PETA as well as Cruelty-Free & Vegan, with no latex, lotions, or fragrances to ensure they are as gentle as possible. We would like to learn more about your experience. If you reach out to us through our website at mymilliemoon.com our customer love team will be happy to help! - Team Millie Moon xx

57. Another parent reported that their daughters were having “horrible chemical burns and peeling skin.” While the brand replied that they “don’t take that lightly,” they have offered no recall or any other public remedy for the continued

★☆☆☆☆ Would not recommend

28 September, 2026 Verified purchase

I've been using these diapers for over 2 years with no issues and suddenly with my last package of diapers my daughters are having horrible chemical burns and blistering and peeling skin. Do not recommend

**1 reply from Millie Moon team - 6 days ago**

Hi Allison, we're so sorry to hear this, and thank you for telling us directly. We know you've trusted Millie Moon for a while and we don't take that lightly. We hope your little one is more comfortable now. We review all the feedback that comes through and would really like to understand more about what happened. Please get in touch via our website so our Customer Love team can follow up with you.

Allison

**quality** 1.0 out of 5 **value** 1.0 out of 5

5 guests found this review helpful. Did you?

Helpful Not helpful Report review

complaints:

58. The Target website contains multiple reviews regarding skin irritation experienced by users of the Products, and responses from Defendant that offer no real solutions:

59. Similar responses can be found on the Walmart.com website as well:

Sep 16, 2026

Tyra

**Item details**

Count: 80

Diaper size: Size 3

★☆☆☆☆ **Verified Purchase**

daughter broke out all over her stomach and diaper area, not for sensitive skin babies unfortunately

Helpful? (0) (0) Report

reply from **Millie Moon** View less

Hi Tyra, we appreciate you reaching out and leaving a review. We are so sorry to hear about the experience both you and your little one have had. As parents ourselves I can understand how worrying this would have been for you and your family. We would like to learn more about your experience. If you reach out to us through our website at mymilliemoon.com our customer love team will be happy to help! - Team Millie Moon xx




60. Several complaints and reports indicate that consumers were long-time users of Millie Moon products, but a recent change in the product seems to have caused skin irritation on their children.

61. A spokesperson for Millie Moon admitted that there was a "recent update" made to the diaper's "outer layer" that extended the printed design further up the diaper.[10]

## **<u>III. Defendant Knew Its Disposable Diapers Contained Defects Causing Harm and Had a Duty to Disclose</u>**

62. Defendant knew, or should have known, that the advertising and labeling claims made on the Products are false and misleading.

63. Defendant had actual and/or constructive knowledge of the defects through the numerous consumer complaints.

---

[10] ***Millie Moon says it won't recall diapers*, WCPO, *supra* n.3.**

64. As evidenced above, Defendant has acknowledged several reported incidents in which infants and children developed rashes or burn-like injuries after using Defendant's Products.

65. Defendant's marketing materials touted features such as "dermatologically tested," "safe on sensitive skin" and "designed to . . . help reduce rashes." Representations regarding the safety of the products for use on skin were misleading because they omit the material fact that the Products include a foreseeable risk of causing irritation to the skin.

66. Defendant knew, or should have known, that the advertising for the Products misrepresented material facts concerning safety.

67. Defendant knew, or should have known, that the representations and statements made through its labeling and advertising would mislead consumers to purchase the Products instead of competitors' cheaper products based on a false belief that the Products were safer and suitable for use on their children.

68. Had Defendant disclosed the true risks of the Products, Plaintiff and Class Members would not have purchased the Products, or would have paid less for them, had the Products been truthfully and accurately labeled.

## FED. R. CIV. P. 9(b) ALLEGATIONS

69. Although Defendant is in the best position to know information about the design, manufacture, distribution, and sale of the Products, as well as the facts surrounding the defects in the Products during the relevant timeframe, to the extent necessary, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

70. **WHO**: Defendant ZURU, LLC made material misrepresentations and omissions of fact on marketing, the Millie Moon website, on the Products' packaging, labels, use and care instructions, through its responses to consumer complaints and reports of injuries, and through authorized retailers of the Products,

including Target and Walmart. Defendant participated in and controlled the conduct alleged herein.

71. **WHAT**: The misrepresentations made by Defendant included statements that the Products were safe and suitable for use directly on skin, specifically that they were "dermatologically tested," "safe on sensitive skin" and "designed to . . . help reduce rashes." However, this conduct continues to be fraudulent because it omits and conceals that the Products are defective, unsafe, and unsuitable for their intended use in that the Products contain a defect that is causing skin irritation on hundreds (or thousands) of users. Defendant affirmatively represents that its Products are safe when they are not. Though Defendant responds to complaints and reports made on retailer websites and claims that it reaches out to users who complain or submit reports of defects, Defendant fails to warn consumers that the Products were not suitable for their intended use and pose a risk of injury and skin irritation. Defendant's conduct has the effect of deceiving Plaintiff, Class Members, and reasonable consumers into believing that the Products were not defective. Defendant knew, or should have known, that the existence of any defect causing risk of injury is material to a reasonable consumer, including Plaintiff and Class Members, and affects purchasing decisions. Yet Defendant omitted any warning that the Products are defective.

72. **WHEN:** Defendant has and continues to make these material misrepresentations and omissions throughout the Class Period, including at the time Plaintiff purchased an affected Product on September 7, 2026. Defendant had knowledge of the risks inherent in the Products since at least July 12, 2023, when the first report was posted to the CPSC website describing their children breaking out in horrible rashes and chemical burns. These complaints have increased drastically since the beginning of 2026.

73. **WHERE:** Defendant's misrepresentations and omissions are made on Millie Moon advertising, product labels, the mymilliemoon.com website, and the websites of authorized retailers. Plaintiff was exposed to Defendant's representations when purchasing Products through Target and the marketing seen beforehand.

74. **HOW:** Defendant misrepresented material facts regarding the Products by representing them as safe and suitable for use on infants' and children's skin for extended periods of time, specifically that they were "dermatologically tested," "safe on sensitive skin" and "designed to . . . help reduce rashes." Defendant did not disclose any potential risk of skin irritation associated with its Products and has refused to recall its products. Defendant possesses exclusive knowledge of the design specifications, pre-market testing data, manufacturing processes, formulation, material sources and quality, post-sale incident reports, and consumer reports, none of which are available to Plaintiff or Class Members.

75. **WHY:** Defendant made these material misrepresentations and omissions for the purpose of inducing Plaintiff, Class Members, and all reasonable consumers to purchase the Products and the pay a premium price for them, and to distinguish the Products from lower-cost alternatives. The effect was that Defendant continued to sell affected Products in the United States and profit from those sales throughout the relevant time period.

76. **INJURY:** Plaintiff and Class Members purchased, purchased more of, or paid more for the Products than they otherwise would have absent Defendant's misrepresentations and omissions. Had Defendant disclosed the defects in the Products and the risk of skin irritation, Plaintiff and Class Members would not have purchased the Products or would have paid materially less for them.

## TOLLING

77. Plaintiff and Class Members could not reasonable have discovered the defects in the Products, or Defendant's omissions concerning the defects, until numerous other consumers and putative Class Members started to make complaints regarding the harm caused by the Products, which began in earnest in March of 2026. Any applicable statutes of limitations have accordingly been tolled by the discovery rule and by Defendant's fraudulent concealment. Defendant is estopped from relying on any limitations defense.

## CLASS ACTION ALLEGATIONS

78. Plaintiff brings this action on behalf of himself and the following Class under Rule 23(b)(3) and 23(c)(4) of the Federal Rules of Civil Procedure:

> All persons in the United States who purchased the Products for personal use and not for resale during the fullest period allowed by law ("Class").

79. Excluded from the Class are: (a) any officers, directors or employees, or immediate family members of the officers, directors, or employees of Defendant or any entity in which Defendant has a controlling interest; (b) any legal counsel or employee of legal counsel for the Defendant; (c) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members; and (d) any person who has previously settled claims related to the Defect with Defendant.

80. Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

81. **Numerosity**. Class Members are numerous and geographically dispersed, making joinder of all Class Members impracticable. While the exact number of Class Members remains currently unknown, upon information and belief, there are thousands, if not hundreds of thousands, of putative Class Members.

Moreover, the number of members of the Class may be ascertained from Defendant's books and records, as well as third-party retailers. Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

82. **Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist for all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

a. Whether the Products contained the Defect alleged herein;
b. Whether Defendant knew or should have known of the Defect;
c. Whether Defendant had to disclose the Defect to consumers;
d. Whether Defendant's representations and omissions were misleading or deceptive;
e. Whether Defendant's conduct was unfair or illegal;
f. Whether Defendant's conduct violated the California consumer protection statutes alleged herein;
g. Whether Defendant breached its implied warranties;
h. Whether Class Members suffered economic injury;
i. Whether Defendant's conduct violates public policy;
j. Whether the facts Defendant omitted were material to a reasonable consumer;
k. Whether Defendant was unjustly enriched at the expense of Plaintiff and members of the putative Class in connection with selling the Defective Products; and
l. Whether Plaintiff and members of the putative Class are entitled to monetary damages and, if so, the nature of such relief;

83. **Typicality.** Plaintiff's claims are typical of those of the absent Class Members in that Plaintiff and the Class Members each purchased and used the Products, and each sustained damages arising from Defendant's wrongful conduct, as disclosed herein. Plaintiff shares the aforementioned facts and legal claims or questions with the putative Class Members. Plaintiff and all members of the putative Class have been similarly affected by Defendant's common misconduct alleged herein. Plaintiff and all members of the putative Class sustained monetary and economic injuries, including—but not limited to—ascertainable losses resulting from Defendant's deceptive omissions concerning the Products' safety and ability.

84. **Adequacy**. Plaintiff will fairly and adequately represent and protect the interests of the members of the putative Class. Plaintiff has retained counsel with substantial experience in handling complex class action litigation, including the issues that arise in this type of consumer protection litigation. Further, Plaintiff and counsel are committed to the vigorous prosecution of this action. Plaintiff has no conflicts of interest or interests adverse to those of the putative Class.

85. **Insufficiency of Separate Actions**. Absent a class action, Plaintiff and members of the Class will continue to suffer the harm described herein, for which they would have no remedy. Even if individual consumers could bring separate actions, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant.

86. **Superiority**. A class action is superior to any other available method for the fair and efficient adjudication of the present controversy for at least the following reasons:

a. The damages suffered by each individual member of the putative Class do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct;

b. Even if individual members of the Class had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

c. The claims presented in this case predominate over any questions of law or fact affecting individual members of the Class;

d. Individual joinder of all members of the Class is impracticable;

e. Absent a Class, Plaintiff and members of the putative Class will continue to suffer harm because of Defendant's unlawful conduct; and

f. This action presents no manageability concerns that would impede its treatment as a class action and, in fact, is the most appropriate and efficient method by which Plaintiff and the members of the putative Class can obtain redress for the harm caused by Defendant's misconduct.

87. In the alternative, the Class may be certified for the following reasons:

a. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication concerning individual members of the Class, which would establish incompatible standards of conduct for Defendant; and

b. Adjudications of claims of the individual members of the Class against Defendant would, as a practical matter, be dispositive of the interests of other members of the putative Class who are not parties to the adjudication and may substantially impair or impede

the ability of other putative Class Members to protect their interests.

## CAUSES OF ACTION

## COUNT I

## Violation of California's Unfair Competition Law ("UCL") Cal. Bus. & Prof. Code §§ 17200 et seq.

88. Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in paragraphs 1-87 as though fully set forth herein.

89. Plaintiff brings this Count on behalf of himself and the proposed Class.

90. Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

91. Plaintiff and Class Members who purchased Defendant's Products suffered an injury by virtue of buying Products in which Defendant omitted the Products' true quality. Had Plaintiff and Class Members known that Defendant omitted material information regarding the Products, they would not have purchased the Products.

92. Defendant's conduct, as alleged herein, violates the laws and public policies of California and the federal government, as set out in this Complaint, including, without limitation, violations of the Song-Beverly Consumer Warranty Act, Cal Civ. Code §§ 1790, et seq., and negligent or fraudulent misrepresentation.

93. There is no benefit to consumers or competition by allowing Defendant to deceptively label, market and advertise its Products.

94. Defendant's conduct, as described herein, also constitutes a "fraudulent" business practice violative of the UCL. As explained in the preceding paragraphs, Defendant's false statements about the Product fraudulently present the impression that the Products were adequately safe to be used by children. This conduct was designed to, and did, deceive consumers as to the true quality and value of the Products they purchased.

95. Defendant knew, or should have known, that its false representations and conduct constituted unlawful, unfair and fraudulent business practices likely to deceive reasonable consumers.

96. Plaintiff and Class Members suffered injuries, in fact, and lost money as a result of each Defendant's UCL violations in that they were deceived into purchasing the Products, which were not adequately safe to use for the purposes of Plaintiff and the Class Members.

97. At a minimum, to the extent the Court ultimately deems the remedies at law that Plaintiff request inadequate, Plaintiff and the Class Members are entitled to equitable relief such as restitution and injunctive relief under Cal. Bus. and Pro. Code § 17203, enjoining Defendant from continuing to conduct business through unlawful, unfair and fraudulent acts and practices.

98. Indeed, restitution under the UCL can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff and other Class Members. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not.

## COUNT II
## Violation of California's False Advertising Law ("FAL")
## Cal. Bus. & Prof. Code §§ 17500 et seq.

99. Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in paragraphs 1-87 as though fully set forth herein.

100. Plaintiff brings this Count on behalf of himself and the proposed Class.

101. Defendant's acts and practices, as described herein, have deceived or are likely to deceive members of the Class and the public. Defendant represents that the Products are safe for children even though they can cause rashes and burns.

102. Defendant has disseminated uniform advertising regarding the Products throughout California and the United States. The advertising was unfair, deceptive, untrue, or misleading within the meaning of Cal. Bus. & Prof. Code § 17500 and was intended and likely to deceive consumers. Defendant's above-described advertising is likely to deceive because Defendant affirmatively represents, *inter alia*, that the Products use "only high quality materials" and are "safe on sensitive skin."

103. In making and disseminating these statements, Defendant knew, or should have known, that their advertising was untrue or misleading. Plaintiff and the Class based their purchasing decisions on Defendant's materially false Representations and were injured in fact and lost money or property as a result.

104. Defendant's misrepresentations concerning the material facts described above constitute false and misleading advertising and therefore violate Cal. Bus. & Prof. Code § 17500 et seq.

105. Plaintiff and the California Subclass Members seek restitution, attorneys' fees, and all other relief that the Court deems proper.

**COUNT III**
**Violation of California Consumers' Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750 et seq.**

106. Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in paragraphs 1-87 as though fully set forth herein.

107. Plaintiff brings this Count on behalf of himself and the proposed Class.

108. This cause of action is brought pursuant to the Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, et seq.

109. Plaintiff and each member of the proposed Class are "consumers" as defined by California Civil Code § 1761(d). Defendant's sale of the Products to consumers were "transactions" within the meaning of California Civil Code §

1761(e). The benefits purchased by Plaintiff and the Class are "goods" within the meaning of the statute. Cal. Civ. Code § 1761(a).

110. Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of Products with the uniform defect:

a. "Representing that goods or services have . . . characteristics . . . that they do not have" (a)(5);
b. "Representing that the Products are of a particular standard, quality and grade when they are not" (a)(7);
c. "Advertising goods or services with intent not to sell them as advertised" (a)(9);
d. "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law" (a)(14);
e. "Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not." (a)(16).

111. Defendant's unfair or deceptive acts or practices, including its concealments, omissions and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and Class Members, about the true safety, quality and true value of the Products.

112. Further, despite Defendant's knowledge of material facts concerning the existence of the serious safety risks posed by the Products, Defendant actively concealed the serious safety risks and the defect from consumers by failing to disclose the serious safety risks or defect to consumers.

113. Defendant knew, or otherwise should have known, that the Products contained the defect and posed serious safety risks based upon the public complaints beginning in early 2026.

114. Defendant omitted, concealed and failed to disclose to consumers that the Products pose serious safety risks to children, including that the Products' design is inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; and/or is capable of causing serious injury to children. Rather than disclose this information, Defendant marketed the Products as safe and suitable for their intended purpose.

115. The facts concealed and/or not disclosed by Defendant to consumers, including Plaintiff and other Class Members, were material, in part, because they concerned an essential aspect of the Products, including the intended use and safety. Such facts affect the conduct of purchasers, and a reasonable person would have considered those facts to be important in deciding whether to purchase the Products. Rather than disclose this information, Defendant marketed the Products as complying with safety standards and regulations, with the utmost manufacturing and design.

116. Plaintiff and the Class suffered injury in fact and actual damages resulting from Defendant's material misrepresentations and omissions.

117. Defendant's violations present a continuing risk to Plaintiff and the Class, as well as to the general public, and therefore affect the public interest.

118. Pursuant to § 1782(a) of the CLRA, Plaintiff notified Defendant in writing by certified mail of the particular violations of § 1770 of the CLRA on October 21, 2026, and demanded that it rectify the problems associated with the actions detailed herein and give notice to all affected consumers of Defendant's intent to act. If Defendant fails to respond to Plaintiff's letter or agree to rectify the problems associated with the actions detailed herein and give notice to all affected

consumers within 30 days of the date of written notice, as proscribed by § 1782, Plaintiff will move to amend the Complaint to pursue claims for actual, punitive and statutory damages, as appropriate against Defendant.

119. Accordingly, pursuant to Civil Code § 1780(a)(2), Plaintiff, on behalf of himself and all other members of the Class, seeks injunctive relief, including an order to enjoin Defendant from continuing its deceptive advertising and sale practices.

120. Pursuant to Cal. Civ. Code § 1780(d), declarations of venue are attached to this Complaint.

**COUNT V**
**Fraudulent Concealment**

121. Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in paragraphs 1-87 as though fully set forth herein.

122. Plaintiff brings this Count on behalf of himself and the proposed Class.

123. Defendant is liable for both fraudulent concealment and nondisclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

124. Specifically, in the various channels of information through which Defendant sold and marketed Products, Defendant committed fraud by concealing the defect and the effects thereof, including that the Products contained a risk of burns and severe rashes.

125. A reasonable customer would not have expected that the Products contained the defect.

126. Defendant knew that these facts about the Products would be important to customers deciding to purchase them. Defendant ensured that Plaintiff and the Class did not discover this information through actively concealing it. Defendant intended for Plaintiff and the Class to rely on its misrepresentations and omissions, which they did by paying for the Products.

127. Defendant had a duty to disclose the defect.

128. The important facts were known and/or accessible only to the Defendant, including due to their involvement in the design, manufacture, assembly, and testing of the Products. Defendant also knew that these technical facts were not known to or reasonably discoverable by Plaintiff and the Class.

129. Defendant's deceptive actions harmed Plaintiff and the Class. Because Defendant fraudulently concealed the truth about the Products, customers who paid for the Products suffered economic losses. Plaintiff suffered damages including but not limited to overpaying for diapers that did not perform as represented and reasonably expected and were of substantially less quality than represented. Accordingly, Defendant is liable to Plaintiff and the Class for damages in an amount to be proven at trial.

130. Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the rights of Plaintiff and the Class; and to enrich themselves. Its misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

## COUNT VI
## Breach of Implied Warranty of Merchantability
## U.C.C. § 2-314

131. Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in paragraphs 1-87 as though fully set forth herein.

132. Plaintiff brings this Count on behalf of himself and the proposed Class.

133. Defendant was and is, at all relevant times, a merchant involved in the manufacturing, distribution, warranting, and/or sale of the Products.

134. The Products were and are, at all relevant times, a "good" under the relevant laws.

135. Defendant knew or had reason to know of the specific use for which the Products, as goods, were purchased.

136. Defendant entered into agreements with retailers, suppliers, and/or contractors to sell their Products to be used by Plaintiff and the proposed Class Members.

137. Defendant provided Plaintiff and the proposed Class Members with implied warranties that the Products was merchantable and fit for the ordinary purposes for which the Products was used and sold and was not otherwise injurious to consumers, that the Products would pass without objection in the trade, be of fair and average quality, and conform to the promises and affirmations of fact made by Defendant in its misrepresentations and omissions regarding safety. This implied warranty of merchantability is part of the basis for the benefit of the bargain between Defendant and Plaintiff and Class Members.

138. Defendant breached the implied warranty of merchantability because the Products are not fit for their ordinary purpose. The Products contain the Defect, rendering the Products unsafe to use as intended. Therefore, the Products are not fit for their particular purpose.

139. The aforementioned problems associated with the Products constitute safety risks, rendering the Products unsafe and unsuitable for consumers. Therefore, there is a breach of the implied warranty of merchantability.

140. Plaintiff and Class Members have had sufficient direct dealings with either Defendant or one of their authorized retailers, representatives, and agents to establish a contract between Defendant, on the one hand, and Plaintiff and each Class Member, on the other hand.

141. Nevertheless, privity is not required because Plaintiff and each Class Member are the intended beneficiaries of Defendant's warranties and its sale through retailers. The retailers were not intended to be the ultimate consumers of the Product

and have no rights under the warranties provided by Defendant. Defendant's warranties were designed for and intended to benefit the consumer only, and Plaintiff and Class Members were the intended beneficiaries of the Products. Thus, it was reasonably foreseeable that Plaintiff and Class Members would be the intended beneficiaries of the Products and their warranties.

142. Defendant impliedly warranted that the Products were safe, suitable for children to wear, of merchantable quality, and fit for their intended purpose. These implied warranties included, among other things: (i) a warranty that the Products manufactured, supplied, distributed, and/or sold by Defendant were safe and suitable to play in and around; (ii) a warranty that the Products would be fit for its intended use while the Products are being used; and (iii) a warranty that the Products would conform to all of the promises and affirmations of fact on the Products' label and online advertising.

143. Instead, the Products contain a defective design and/or manufacture, as alleged herein. As a result of the defect, the Products fail to conform to the promises or affirmations of fact on their label and online advertising.

144. Defendant failed to adequately warn Plaintiff and Class Members that the Products contained the defect and were not safe or suitable for use.

145. Defendant breached the implied warranties because the Products were and are sold with the defect.

146. Defendant's attempt to limit or disclaim any implied warranties is unconscionable and therefore unenforceable.

147. Plaintiff and Class Members had no meaningful choice in determining the terms that unreasonably favored Defendant, who had superior and exclusive knowledge of the defect which existed at the time of sale of the Products. A gross disparity in bargaining power existed between Defendant and Plaintiff and the Class

Members, and Defendant knew or should have known that the Products were defective at the time of sale.

148. Contrary to the applicable implied warranties, the Products, at the time of sale and thereafter, were not fit for its ordinary and intended purpose. Instead, the Products suffer from the defect as alleged herein.

149. As a direct and proximate result of the foregoing, Plaintiff and the Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## COUNT VII
## Unjust Enrichment

150. Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in paragraphs 1-87 as though fully set forth herein.

151. Plaintiff brings this Count on behalf of himself and the proposed Class.

152. Plaintiff and the putative Class Members conferred a benefit on Defendant by purchasing the Product, payments that Defendant knowingly accepted while aware of the Products' defect and unfitness for its intended use.

153. Defendant either knew or should have known that the payments rendered by Plaintiff and Class Members were given with the expectation that the Products would have the qualities, characteristics, and suitability for the use represented and warranted by Defendant. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

154. By its wrongful acts and omissions described herein, including selling the Products, which contained a defect, Defendant was unjustly enriched at the expense of Plaintiff and putative Class Members.

155. Defendant's wrongful conduct directly caused Plaintiff's detriment and resulted in Defendant's unjust enrichment, as the benefit it received flowed directly from the misconduct alleged in this Complaint.

156. Defendant has unjustly profited from its unlawful, unfair, and deceptive conduct at the expense of Plaintiff and the putative Class Members. It would be inequitable and contrary to principles of justice for Defendant to retain the profits, benefits, and other compensation obtained through the sale of the Products, as such enrichment was directly tied to the misconduct alleged herein.

157. Defendant wes unjustly enriched by retaining revenues from Class Members' purchases of the Products. Such enrichment is unjust and inequitable because Defendant knowingly manufactured, marketed, and sold defective and dangerous Products while omitting material facts, causing Plaintiff and Class Members to purchase products they otherwise would not have bought had the truth been disclosed.

158. Defendant's conduct allows it to knowingly realize substantial revenues from selling the Product at the expense of, and to the detriment of, Plaintiff and Class Members, and Defendant's benefit and enrichment. Defendant's retention of these benefits violates fundamental justice, equity, and good conscience principles.

159. Under common law principles of unjust enrichment and quasi-contract, it is inequitable for Defendant to retain the benefits conferred by Plaintiff's and Class Members' overpayments.

160. Plaintiff and Members of the Class seek disgorgement of all profits resulting from such overpayment.

**COUNT VIII**
**Negligent Design**

161. Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in paragraphs 1-87 as though fully set forth herein.

162. Plaintiff brings this Count on behalf of himself and the proposed Class.

163. Defendant owed Plaintiff and the Class a duty to design and formulate the Product in a reasonable manner.

164. The design and formulation of the Products was defective and unreasonably dangerous, causing exposure to a material with harmful effects. Thus, the Product is now worthless.

165. The design and formulation of the Product caused them to not be fit, suitable, or safe for their intended purpose. The dangers of the Product outweighed the benefits and rendered the product unreasonably dangerous.

166. There are other diaper products that do not expose the consumers to a risk of burns or rashes.

167. The risk/benefit profile of the Products was unreasonable, and the Products should have had stronger and clearer warnings or should not have been sold in the market.

168. The Defendant's negligent design/formulation of the Products was the proximate cause of damages to the Plaintiff and the Class Members.

169. Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

## **COUNT IX**
## **Negligent Failure to Warn**

170. Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in paragraphs 1-87 as though fully set forth herein.

171. Plaintiff brings this Count on behalf of himself and the proposed Class.

172. Defendant owed Plaintiff and Class Members a duty of care and to warn of any risks associated with the Products.

173. Defendant knew or should have known of the defect but failed to warn Plaintiff and Members of the Class.

174. Plaintiff had no way of knowing of the Products' latent defect.

175. Defendant's failure to warn caused Plaintiff and Class Members economic damages and injuries in the form of lost value due to the risk of burns and rashes.

176. Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

**COUNT X**
**Negligence**

177. Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in paragraphs 1-87 as though fully set forth herein.

178. Plaintiff brings this Count on behalf of himself and the proposed Class.

179. Defendant directly or indirectly, caused the Products to be sold, distributed, packaged, labeled, marketed, promoted and/or used by Plaintiff and the other Class Members.

180. At all times relevant, Defendant had a duty to exercise reasonable care in the design, testing, research, manufacture, marketing, advertisement, supply, promotion, packaging, sale and distribution of the Products, including the duty to take all reasonable steps necessary to manufacture, promote and/or sell a product that was not unreasonably dangerous to consumers and users of the Products.

181. At all times relevant, Defendant had a duty to exercise reasonable care in the marketing, advertisement and sale of the Products. Defendant's duty of care owed to consumers and the general public included providing accurate, true and

correct information concerning the risks of using the Products and appropriate, complete and accurate warnings concerning the potential safety risks regarding the use of the Products, and, in particular, their uniform defect.

182. At all times relevant, Defendant knew or, in the exercise of reasonable care should have known, of the defect and the corresponding risks associated thereto.

183. Defendant knew, or otherwise should have known, that the Products posed serious safety risks to consumers and their children, because of, among other things, their own internal testing and data.

184. Accordingly, at all times relevant, Defendant knew or, in the exercise of reasonable care should have known, that use of the Products created a dangerous and unreasonable risk of injury to consumers and their children when using the Products, including Plaintiff and the other Class Members.

185. Defendant also knew or, in the exercise of reasonable care should have known, that users and consumers of the Products were unaware of the defect of the Products and the associated risks.

186. Defendant omitted, concealed and failed to disclose to consumers that the Products pose serious safety risks to consumers and their children, including that the Products were inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; and contained a defect. Defendant failed to adequately warn Plaintiff and Class Members that the Products contained the defect, were not safe or suitable for their marketed and intended use and could have caused, and did cause, consumers and their children to be placed in the risk of harm.

187. A reasonable manufacturer, distributor or seller of the Products, under the same or similar circumstances, would have warned of the defect.

188. Defendant did not warn of the particular risks associated with the Products as detailed *supra*, for reasons which fell below the acceptable standard of

care, *i.e.*, what a reasonably prudent manufacturer would have known and warned about.

189. As such, Defendant breached the duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, supply, promotion, advertisement, packaging, sale and distribution of the Products, in that Defendant manufactured, marketed, promoted and sold the Products with the uniform defect, knew or had reason to know of the defect inherent in the Products, knew or had reason to know that consumers' and their children's use of the Products created a significant risk of serious injury and is unreasonably dangerous for consumers and their children and failed to prevent or adequately warn of these risks.

190. In breach of its duties, Defendant negligently: failed to design, manufacture, formulate and package the Products without the uniform defect; designed, manufactured and formulated the Products such that they contained the uniform defect; failed to conduct adequate research, and testing to determine the extent to which the Products were likely to present a serious risk of harm to consumers and their children; and failed to warn that the Products could and have caused children to be placed in dangerous situations resulting in injury.

191. Despite the ability and means to investigate, study, and test the Products and to provide adequate warnings, Defendant failed to do so. Indeed, Defendant wrongfully concealed information and further made false and/or misleading statements concerning the safety of the Products.

192. Defendant was negligent in the following respects:

a. Manufacturing, producing, promoting, formulating, creating, developing, designing, selling and/or distributing the Products without thorough and adequate pre-and post-market testing;

b. Failing to undertake sufficient studies and conduct necessary testing and adverse event analysis to determine whether the Products were safe for their intended use;

c. Failing to use reasonable and prudent care in the design, research, manufacture and development of the Products to avoid the risk of serious harm to consumers and their children associated with the prevalent use of the Products;

d. Failing to provide adequate instructions, guidelines and safety precautions to those consumers who Defendant could reasonably foresee would use the Products;

e. Failing to disclose to Plaintiff, Class Members, users/consumers and the general public that use of the Products presented risks or serious injury to consumers and their children;

f. Failing to warn Plaintiff and Class Members, consumers and the general public that the Products' risk of harm was unreasonable and that there were safer and effective alternative Products available to Plaintiff and other consumers;

g. Representing that its Products were safe for their intended use when, in fact, Defendant knew, or should have known, that the Products were not safe for their intended purpose;

h. Failing to make and/or submit any changes to the Products' labeling or other promotional materials that would alert the consumers and the general public of the risks of the Products and related defect;

i. Advertising, marketing and recommending the use of the Products while concealing and failing to disclose or warn of the dangers known by Defendant to be associated with or caused by the use of the Products and/or defect;

j. Continuing to disseminate information to its consumers, which indicates or implies that Defendant's Products are safe and suitable for their advertised and intended use; and

k. Continuing the manufacture and sale of its Products with the knowledge that the Products were unreasonably unsafe and dangerous to consumers and their children.

193. Defendant knew, or otherwise should have known, that it was foreseeable that consumers and their children, including Plaintiff and the other Class Members, would be placed at risk of serious injury as a result of Defendant's failure to exercise ordinary care in the manufacturing, marketing, promotion, labeling, distribution and sale of the Products.

194. Plaintiff and the other Class Members did not know the nature and extent of the injuries that could result from the intended use of the Products.

195. Defendant's negligence was the proximate cause of the injuries, harm and economic losses that Plaintiff and the other Class Members suffered, as described herein.

196. Defendant's failure to warn or instruct was a substantial factor in causing Plaintiff's and other Class Members' harm.

197. Defendant's conduct, as described supra, was reckless. Defendant regularly risked the safety of consumers and users of the Products, including Plaintiff, the other Class Members and their children, with full knowledge of the dangers of the Products. Defendant made conscious decisions not to redesign, re-label, warn or inform the unsuspecting public, including Plaintiff and the other Class Members.

198. Defendant's reckless conduct therefore warrants an award of aggravated or punitive damages.

199. As a direct and proximate result of Defendant's wrongful acts and omissions in placing the defective Products into the stream of commerce without adequate warnings of the risks of serious injury, Plaintiff and the other Class Members were damaged.

**COUNT XI**
**Negligent Misrepresentation**

200. Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in paragraphs 1-87 as though fully set forth herein.

201. Plaintiff brings this Count on behalf of himself and the proposed Class.

202. As a seller of the Product, Defendant had a duty to give correct information to Plaintiff and Class Members regarding the truth and accuracy of the material facts concerning the serious safety risks posed by the Product. Defendant had sole possession and control of this information and had a duty to disclose it accurately to Plaintiff and Class Members.

203. Defendant created a special relationship with Plaintiff and Class Members through their misrepresentations and omissions regarding safety and through its designing, manufacturing, marketing, and selling the Product as a product specifically suitable for people, including children.

204. Defendant intended the sale of the Product not only to affect Plaintiff and Class Members, but Defendant actually considered the particular needs of consumers and designed, manufactured, and sold the Product for those consumers to meet their particular needs.

205. Defendant held or appeared to hold unique or special expertise and knowledge of the Products. Defendant and Plaintiff, as well as Class Members, had a special relationship of trust and confidence, and Defendant persuaded Plaintiff and Class Members to purchase the Product based on their misrepresentations and reputation of having expertise and knowledge.

206. Defendant affirmatively misrepresented and omitted material facts regarding the Products' safety, including but not limited to explicit or implicit assurances that the Product was safe and suitable for use. These false and misleading representations were made for the express purpose of inducing Plaintiff and Class Members to purchase the Products. Defendant knew or should have known that the Products posed serious safety risks, and yet marketed and sold them as appropriate for use by children, thereby misleading reasonable consumers into believing they met applicable safety standards.

207. Because the defect in the Products could not be detected until after it manifested, and because Defendant purposefully concealed the defective nature of the Products and the serious safety risks caused by the defect, Plaintiff and the Class Members were not reasonably able to discover the defect, despite their exercise of due diligence.

208. Defendant knew, or otherwise should have known, that the Product contained the defect and posed serious safety risks to users based upon the complaints publicized throughout 2026.

209. Despite Defendant's knowledge of material facts concerning the existence of the serious safety risks posed by the Products, Defendant actively concealed the serious safety risks from consumers by failing to disclose the serious safety risks to consumers.

210. Defendant omitted, concealed, and failed to disclose to consumers that the Products pose a serious safety risks to children. Rather than disclose this information, Defendant marketed the Product as safe and suitable for their intended purpose.

211. The facts concealed and/or not disclosed by Defendant to consumers, including Plaintiff and other Class Members, were material, in part, because they concerned an essential aspect of the Products, including the intended use and safety.

Such facts affect the conduct of purchasers, and a reasonable person would have considered those facts to be important in deciding whether to purchase the Products. Rather than disclose this information, Defendant marketed the Products as complying with safety standards and regulations, with the utmost manufacturing and design.

212. Defendant intentionally concealed and/or failed to disclose such material facts for the purpose of inducing consumers, including Plaintiff and other Class Members, to purchase the Products.

213. Plaintiff and other Class Members, without knowledge of the true nature of the Products, justifiably acted or relied upon the concealed and/or nondisclosed material facts to their detriment, as evidenced by their purchase of the Product.

214. As a direct and proximate result of Defendant's concealment and/or nondisclosure of material facts, consumers, including Plaintiff and other Class Members have been damaged as alleged herein, and are entitled to recover damages. Plaintiff and other Class Members would not have purchased the Products on the same terms had they known that it posed safety risks to their infants.

215. Plaintiff and Class Members are entitled to all relief the Court finds proper as a result of Defendant's conduct described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that this Court:

a. Declare that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel;

b. Award Plaintiff and Class Members compensatory, statutory, actual, and/or monetary damages, including interest, in an amount to be determined at trial, except for injunctive relief only under the CLRA;

c. Declare that Defendant must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Products;

d. Order Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

e. Award punitive damages where permitted by statute, in an amount to be determined at trial, due to Defendant's willful and reckless disregard of the serious risk of fire and burn injuries to consumers despite their knowledge of the Defect;

f. Order such other and further relief as may be just and proper.

## **JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury of all claims so triable.

DATED: October 28, 2026

Respectfully submitted,

/s/ Daniel Srourian

Daniel Srourian (SBN 285678)
**SROURIAN LAW FIRM, P.C.**
468 N Camden Drive, Suite 200
Beverly Hills, CA 90210
Tel: (213) 474-3800
E: daniel@slfla.com

Leslie Pescia
Rachel N. Minder
**SIRI & GLIMSTAD LLP**
101 North Seventh Street, #827
Louisville, KY 40202

Phone: (646) 442-6466
lpescia@sirillp.com
rminder@sirillp.com

*Attorneys for Plaintiff & Putative Class Members*